# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**VINCENT THEDE, FREDDIE MINCEY, WILLIAM HURST, BARRY CLINE and VIRGIL BILL,**

        **Plaintiffs,**

**v.**
                    **Case No:   6:15-cv-33-Orl-28GJK**

**B & D WATERBLASTING COMPANY, INC. and DONALD HESS, JR.,**

        **Defendants.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PARTIES' JOINT MOTION FOR APPROVAL OF SETTLEMENT (Doc. No. 24)** |
| **FILED:** | **June 15, 2015** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

## I.    BACKGROUND.

On January 9, 2015, Vincent Thede, Freddie Mincey, William Hurst, Barry Cline, and Virgil Bill, on behalf of themselves and others similarly situated, filed an collective action complaint (the "Complaint") against Defendants alleging violation of the overtime provision of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a).   Doc. No. 1.[1]   On January 26,

---

[1] The Complaint sought certification of two (2) groups of workers.   Doc. No. 1 at ¶¶ 61-70.   The first group included Messrs. Thede, Mincey, Hurst, Cline, and other similarly situated individuals who were paid an hourly wage and performed duties including, but not limited to, "hosing and cleaning the inside of underground pipe, removing debris

2015, Jason Hinkle joined this action as opt-in plaintiff.   Doc. No. 10.   The named plaintiffs and opt-in plaintiff will hereinafter be referred to as the "Plaintiffs".   On February 2, 2015, Defendants filed an answer denying Plaintiffs' claims and asserted numerous affirmative defenses.   Doc. No. 11.   On June 15, 2015, the parties filed a Joint Motion for Approval of Settlement (the "Motion") requesting that the Court approve their settlement agreement (the "Agreement") and dismiss the case with prejudice.   Doc. No. 24.

## II.   LAW.

In *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982), the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees.   First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . ..   The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations.   When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id*. at 1352-53.   Thus, unless the parties have the Secretary of Labor supervise the payment of unpaid wages owed or obtain the Court's approval of the settlement agreement, the parties' agreement is unenforceable.   *Id*.; *see also Sammons v. Sonic-North Cadillac, Inc.*, Case No. 6:07-cv-277-Orl-19DAB, 2007 WL 2298032, at *5 (M.D. Fla. Aug. 7, 2007) (noting that settlement of

---

from the underground pipe, camera set up, running laser inspection equipment, video inspections, repairs to underground pipe, equipment repairs and driving." *Id*. at ¶¶ 8-23, 61-64.   The second group included Virgil Bill, Jason Hinkle, and other similarly situated individuals who were classified by Defendants as managers and performed duties including, but not limited to, "operating laser equipment, reviewing laser profiles, repairing camera equipment, information technology, assisting with job set ups, assisting other employees with laser equipment, and traveling to job sites to ensure equipment was working properly."   Doc. Nos. 1 at ¶¶ 24-28, 65-70; 10-1.

FLSA claim in arbitration proceeding is not enforceable under *Lynn's Food* because it lacked Court approval or supervision by the Secretary of Labor).   Before approving an FLSA settlement, the Court must scrutinize it to determine if it is a fair and reasonable resolution of a bona fide dispute.   *Lynn's Food Stores*, 679 F.2d at 1354-55.   If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement.   *Id.* at 1354.

In determining whether the settlement is fair and reasonable, the Court should consider the following factors:

1.  the existence of collusion behind the settlement;
2.  the complexity, expense, and likely duration of the litigation;
3.  the stage of the proceedings and the amount of discovery completed;
4.  the probability of plaintiff's success on the merits;
5.  the range of possible recovery; and
6.  the opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, Case No. 6:05-cv-592-Orl-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007) *report and recommendation adopted*, 2007 WL 219981 (M.D. Fla. Jan. 26, 2007). The Court should be mindful of the strong presumption in favor of finding a settlement fair.   *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[2]

In FLSA cases, the Eleventh Circuit has questioned the validity of contingency fee agreements.   *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (citing *Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of the contingent fee agreement; for it may well be that Congress intended that an employee's

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

recovery should be net[.]")).   In *Silva*, the Eleventh Circuit held:

> That Silva and Zidell entered into a contingency contract to establish Zidell's compensation if Silva prevailed on the FLSA claim is of little moment in the context of FLSA.   FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.   FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. *See Lynn's Food*, 679 F.2d at 1352 ("FLSA rights cannot be abridged by contract or otherwise waived.") (quotation and citation omitted).   To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee.  *See United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) ("the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel"); *see also Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F.Supp.2d 1259 (M.D. Fla. 2008).

*Id*. at 351-52.[3]   In order for the Court to determine whether the proposed settlement is reasonable, counsel for the claimant(s) must first disclose the extent to which the FLSA claim has or will be compromised by the deduction of attorney's fees, costs or expenses pursuant to a contract between the plaintiff and his or her counsel, or otherwise.   *Id*.   When a plaintiff receives less than a full recovery, any payment (whether or not agreed to by a defendant) above a reasonable fee improperly detracts from the plaintiff's recovery.[4]   Thus, a potential conflict can arise between counsel and their client regarding how much of the plaintiff's total recovery should be allocated to attorney's fees and costs.[5]   It is the Court's responsibility to ensure that any such allocation is

---

[3]  In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority."   11th Cir. R. 36-2.

[4]  From a purely economic standpoint, a defendant is largely indifferent as to how its settlement proceeds are divided as between a plaintiff and his or her counsel.   Where a plaintiff is receiving less than full compensation, payment of fees necessarily reduces the plaintiff's potential recovery.

[5]  This potential conflict is exacerbated in cases where the defendant makes a lump sum offer which is less than full

reasonable. *See Silva*, 307 F. App'x at 351-52.   In doing so, the Court uses the lodestar method for guidance. *See Comstock v. Fla. Metal Recycling, LLC*, 2009 WL 1586604, at *2 (S.D. Fla. June 5, 2009).   As the Court interprets the *Lynn's Food* and *Silva* cases, where there is a compromise of the amount due to the plaintiff, the Court should decide the reasonableness of the attorney's fees provision under the parties' settlement agreement using the lodestar method as a guide.   In such a case, any compensation for attorney's fees beyond that justified by the lodestar method is unreasonable unless exceptional circumstances would justify such an award.

An alternate means of demonstrating the reasonableness of attorney fees and costs was set forth in *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222 (M.D. Fla. 2009).   In *Bonetti*, the Honorable Gregory A. Presnell held:

> In sum, if the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) *represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.*

*Bonetti*, 715 F. Supp. 2d at 1228 (emphasis added).   Judge Presnell maintained that if the matter of attorney fees "[is] addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." *Id*.   The undersigned finds this reasoning persuasive.

---

compensation, because any allocation between fees and the client's recovery could become somewhat arbitrary.

## III.   ANALYSIS.

### A.  Settlement Amount.

This case involves disputed issues of coverage and liability under the FLSA, which constitutes a bona fide dispute.   Doc. Nos. 1; 11; 24 at ¶¶ 5-7.   The parties are represented by independent counsel who are obligated to vigorously represent their clients.   *See* Doc. Nos. 1; 11; 24.   Initially, Plaintiffs claimed that they were entitled to recover the following amounts for unpaid overtime and liquidated damages:

| Plaintiff | Overtime Wages | Liquidated Damages | Total |
|---|---|---|---|
| Vincent Thede | $11,576.74 | $11,576.74 | $23,153.48 |
| Freddie Mincey | $30,394.59 | $30,394.59 | $60,789.18 |
| William Hurst | $16,577.75 | $16,577.75 | $33,155.50 |
| Barry Cline | $13,743.54 | $13,743.54 | $27,487.08 |
| Virgil Bill | $66,550.21 | $66,550.21 | $133,100.42 |
| Jason Hinkle | $55,043.00 | $55,043.00 | $110,086.00 |
| | Total = | | $387,771.66 |

Doc. Nos. 18-1; 18-2; 18-3; 18-4; 18-5; 18-6.   The parties state that Plaintiffs' potential recovery in this case ranges from zero to $387,771.66 based on a variety of factors, which are summarized as follows: the strength of Defendants' affirmative defenses;[6] Plaintiffs' ability to prove a willful violation of the FLSA; Defendants' claim for breach of contract against Mr. Bill;[7] the fact Messrs. Cline and Hurst reside outside of Florida; Plaintiffs susceptibility to credibility attacks if the case proceeds to trial; and, Plaintiffs' need for the wages owed.   Doc. No. 24 at ¶ 17.   Plaintiffs prepared "numerous probability charts" considering the factors outlined above and possible result

---

[6] In particular, Plaintiffs agreed to compromise their claims, in part, due to the strength of the following affirmative defenses: exemption from the overtime wage requirements of the FLSA pursuant to the motor carrier exemption, 29 U.S.C. § 213(b)(1); the application of the executive exemption for Messrs. Bill and Hinkle pursuant to 29 C.F.R. §541.100(a); Defendants' lack of knowledge of Plaintiffs' overtime work; exclusion of "premium pay" pursuant to 29 U.S.C. § 207(e)(5); application of the fluctuating workweek method to calculate overtime; and, Defendants' "good faith" defense.   Doc. No. 24 at ¶ 17.

[7] Defendants' claim for breach of contract against Mr. Bill has not been asserted in this case.   *See* Doc. No. 11.

of their claims.  *Id.* at ¶ 18.   In doing so, Plaintiffs considered the ultimate result if they were to prevail, but the following were to occur: 1) "premium pay" is excluded from their rate of pay; 2) overtime is calculated using the fluctuating workweek method; 3) lunchtime is deducted from hours worked; and 4) Defendants' good faith defense is successful, thereby resulting in a two-year statute of limitations and precluding liquidated damages.  *Id.*   Based on these factors, Plaintiffs determined that they would be owed the following overtime wages: Mr. Thede = $1,454.19; Mr. Mincey = $5,270.00; Mr. Hurst = $3,017.42; Mr. Cline = $2,713.25; Mr. Bill = $18,468.60; and, Mr. Hinkle = $4,491.20.  *Id.*

Under the Agreement, Plaintiffs, in exchange for mutual general releases,[8] have agreed to accept a total settlement amount of $48,457.30, as set forth in the table below:

| Plaintiff | Overtime Wages | Liquidated Damages | Total |
|---|---|---|---|
| Vincent Thede | $1,500.00 | $1,500.00 | $3,000.00 |
| Freddie Mincey | $4,689.51 | $4,689.51 | $9,379.02 |
| William Hurst | $1,000.00 | $1,000.00 | $2,000.00 |
| Barry Cline | $1,350.00 | $1,350.00 | $2,700.00 |
| Virgil Bill | $4,000.00 | $4,000.00 | $8,000.00 |
| Jason Hinkle | $4,000.00 | $4,000.00 | $8,000.00 |
| Attorneys' fees and costs | | | $15,378.28 |
| | **Total =** | | **$48,457.30** |

Doc. Nos. 24 at ¶ 18; 24-1 at 1-4.   While these amounts are significantly less than Plaintiffs' initial calculation of damages, the undersigned finds the parties' explanation of how and why they agreed on the amounts at issue establishes the fairness and reasonableness of their compromise.[9]

---

[8] The general release agreed to by Plaintiffs specifically excludes "any and all claims or causes of action for workers' compensation benefits or any workplace injury belonging to [Mr. Hinkle]."   Doc. No. 24-1 at 4-5.   Also, the general release agreed to by Defendants includes their breach of contract claim against Mr. Bill.   *Id.* at 5.

[9] Despite Defendants' good faith defense, the parties nevertheless agreed to an equal payment of liquidated damages.

Therefore, it is **RECOMMENDED** that the Court find Plaintiffs' compromise and the total settlement amount to be reasonable.

####    B.  Attorneys' Fees and Costs.

Under the Agreement, Plaintiffs' counsel will receive a total of $15,378.28 in attorneys' fees and costs.   Doc. No. 24-1 at 3-4.   The parties represent that attorneys' fees and costs were "agreed upon separately and without regard to the amount paid to the Plaintiff[s]."   Doc. Nos. 24 at ¶ 19; 24-1 at 3.   The settlement appears reasonable on its face, and the parties' representation adequately establishes that the issue of attorneys' fees and costs was agreed upon separately and without regard to the amount paid to Plaintiffs.   *See Bonetti*, 715 F. Supp. 2d at 1228. Accordingly, pursuant to *Bonetti*, it is **RECOMMENDED** that the Court find the Agreement to be a fair and reasonable compromise of Plaintiffs' FLSA claims.

## IV.   <u>CONCLUSION</u>.

Accordingly, it is **RECOMMENDED** that:

1.  The Motion (Doc. No. 24) be **GRANTED** only to the extent that the Court finds the parties' settlement is fair and reasonable;

2.  The Court enter an order dismissing the case with prejudice; and

3.  Direct the Clerk to close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.   **If the parties have no objection to this Report and Recommendation, they may promptly file a joint notice of no objection in order to expedite the final disposition of this case.**

Recommended in Orlando, Florida on July 20, 2015.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy